UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DAMON SPIKENER,<br><br>    Plaintiff,<br><br>v.<br><br>NOBLE FOOD GROUP INC.,<br><br>    Defendant. | Case No. 18-cv-02855-LB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING CASE**<br><br>Re: ECF No. 10 |

**INTRODUCTION**

Plaintiff Damon Spikener brings this action against his former employer Noble Food Group Inc. under Title VII of the Civil Rights Act of 1964. Mr. Spikener claims that Noble Food discriminated against him based on his race. Noble Food moves to compel Mr. Spikener to submit his claim to arbitration, citing an arbitration agreement ("Agreement") that he signed with Noble Food's subsidiary NFG San Francisco LLC. The court can decide the motion without a hearing. N.D. Cal. Civ. L.R. 7-1(b). As Noble Food has promised to pay the costs and fees associated with arbitration, the court grants its motion to compel arbitration and stays this action.

**STATEMENT**

Plaintiff Damon Spikener was employed by Noble Food Group Inc. and/or NFG San Francisco at a Domino's Pizza in San Francisco.[1] (Noble Food is NFG San Francisco's parent company.[2]) He alleges that Noble Food discriminated against him because of his race (African American) and retaliated against him.[3]

When Mr. Spikener was first hired, on April 21, 2016, he signed an Agreement to Arbitrate with NFG San Francisco.[4] The Agreement provides, in relevant part:

> NFG San Francisco LLC (the "Company" or "Employer") is instituting an Arbitration Program (the "Agreement" or "Arbitration Program"). Under the Agreement, any and all disputes, claims or controversies arising out of the employment relationship between the parties or the termination of that relationship, shall be resolved by final and binding arbitration. This Agreement covers any claims that the Company may have against Employee, or that Employee may have against the Company or against any of its officers, directors, employees, agents, or parent, subsidiary, or affiliated entities. The Agreement applies to any Employee who continues to work for Employer after receiving a copy of this Agreement, unless the Employee "opts out" as described below.
>
> The claims covered by this Agreement include, but are not limited to, claims for . . . discrimination, retaliation, or harassment; [and] violation of any federal, state or other governmental constitution, statute, ordinance or regulation (as originally enacted and as amended). . . .
>
> . . . .
>
> . . . . The arbitration shall take place within 50 miles of the city in which Employee is or was last employed by the Company. Other than $150 of any initial filing fee that the Employee must pay to initiate the action with JAMS, the Employer will pay all forum costs, including any further filing fees, arbitrator fees, or administrative fees.
>
> . . . .

---

[1] In his complaint, Mr. Spikener identifies Noble Food as his employer. Compl. – ECF No. 1 at 2–3. The documents he attaches to his complaint (including his paystubs, a letter he wrote to his employer's human-resources department, and a notice he received from the California Department of Fair Employment and Housing) indicate that his employer was NFG San Francisco. Compl. Exs. 1–4, 7 – ECF No. 1 at 8, 10–13, 15, 17–19, 21–22. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Vandenberg Decl. – ECF No. 20 at 2 (¶ 2).

[3] Compl. – ECF No. 1 at 4.

[4] Reichenberger Decl. – ECF No. 10-2 at 2 (¶ 2); Reichenberger Decl. Ex. A (Agreement) – ECF No. 10-2 at 4–6.

**EMPLOYEE OPT-OUT RIGHTS:** EMPLOYEE HAS THIRTY (30) DAYS AFTER RECEIVING THIS AGREEMENT TO OPT OUT OF ARBITRATION. IF EMPLOYEE OPTS OUT, THEN NEITHER THE COMPANY NOR THE EMPLOYEE WILL BE BOUND BY THE TERMS OF THIS AGREEMENT. TO OPT OUT EMPLOYEE MUST: (1) NOTIFY THE COMPANY IN WRITING THAT EMPLOYEE IS OPTING OUT, (2) SIGN THE WRITING; AND (3) MAIL OR HAVE IT DELIVERED TO NFG SAN FRANCISCO, LLC AT 134 N. LASALLE ST., STE 700, CHICAGO, IL 60602 SO THAT HUMAN RESOURCES RECEIVES IT NO LATER THAN THIRTY (30) DAYS AFTER THE DATE EMPLOYEE RECEIVED THIS AGREEMENT. SUCH WRITTEN NOTICE MAY SIMPLY STATE "I WISH TO OPT OUT OF THE ARBITRATION PROGRAM" OR WORDS TO THAT EFFECT. IF NO SUCH NOTICE IS DELIVERED BEFORE THE THIRTY DAY DEADLINE, THEN THIS AGREEMENT WILL BECOME FULLY EFFECTIVE AND BINDING UPON THE DATE BELOW. IF EMPLOYEE OPTS OUT, THE DECISION TO DO SO WILL NOT ADVERSELY AFFECT EMPLOYEE'S EMPLOYMENT IN ANY WAY.

**I ACKNOWLEDGE THAT I HAVE REVIEWED THIS AGREEMENT AND THAT I UNDERSTAND THAT I HAVE THIRTY (30) DAYS TO OPT OUT OF ARBITRATION IF I DO NOT WISH THIS AGREEMENT TO APPLY TO ME.**[5]

Mr. Spikener did not opt out of arbitration.[6]

## ANALYSIS

### 1. Governing Law

"The Federal Arbitration Act (FAA) requires courts to 'place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "Section 2 of the FAA makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (citing 9 U.S.C. § 2). "The final clause of § 2, generally referred to as the savings clause, permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.*

---

[5] Reichenberger Decl. Ex. A (Agreement) – ECF No. 10-2 at 4–6 (emphasis in original).

[6] Reichenberger Decl. – ECF No. 10-2 at 2 (¶ 3).

(some internal quotation marks omitted) (quoting *Concepcion*, 563 U.S. at 339). "'Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration.'" *Id.* (quoting *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016)). Arbitration agreements can cover Title VII claims, as long as the employee enters into the arbitration agreement "knowingly." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323–24 (9th Cir. 2015).

The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The court determines whether the putative arbitration agreement is enforceable under the laws of the state where the contract was formed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

In California, contractual unconscionability has both a procedural and a substantive component. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "In order to establish such a defense, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Poublon*, 846 F.3d at 1260 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015)). "Procedural and substantive unconscionability 'need not be present in the same degree.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910). "Rather, there is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910). "Under California law, 'the party opposing arbitration bears the burden of proving . . . unconscionability.'" *Id.* (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

**2. Application**

Noble Food submits, and Mr. Spikener does not deny, that he signed an agreement that requires him to submit discrimination and retaliation claims to arbitration. Nor does Mr. Spikener argue that he did not enter the agreement (which was clearly labeled an "Agreement to Arbitrate") knowingly. *Cf. Ashbey*, 785 F.3d at 1325–26.

The Agreement, which was with NFG San Francisco, provides that Mr. Spikener must arbitrate claims against NFG San Francisco or "any of its . . . parent . . . entities." Noble Food is a parent entity of NFG San Francisco.[7] Mr. Spikener does not make any argument distinguishing between NFG San Francisco's right to enforce the Agreement and Noble Food's. In light of the fact that Mr. Spikener's claims arise out of his employment (which may have been with NFG San Francisco, as opposed to Noble Food, to begin with) and the facts and context of this case, there is sufficient identity between NFG San Francisco and Noble Food for Noble Food to be able to enforce the arbitration provisions in the Agreement that NFG San Francisco signed. *See Wadler v. Custard Ins. Adjusters, Inc.*, No. 17-cv-05840-WHO, 2018 WL 1745732, at *6 (N.D. Cal. Apr. 11, 2018) ("'nonparties to arbitration agreements are allowed to enforce those agreements where there is sufficient identity of parties'") (quoting *Laswell v. AG Seal Beach, LLC*, 189 Cal. App. 4th 1399, 1406 (2010)).

Mr. Spikener argues that the arbitration agreement is unenforceable because it is unconscionable and against public policy, and because he only signed it out of fear of not being hired. As the party opposing arbitration, Mr. Spikener bears the burden of proving unconscionability.

**2.1 Procedural Unconscionability**

Mr. Spikener has not met his burden of showing that the agreement is procedurally unconscionable. While he claims he signed it out of a fear of not being hired, the agreement expressly states that employees have thirty days to opt out of the arbitration agreement and that

---

[7] Vandenberg Decl. – ECF No. 20 at 2 (¶ 2).

ORDER – No. 18-cv-02855-LB            5

doing so will not adversely affect the employee's employment in any way. Mr. Spikener submits no evidence that he would have suffered adverse employment consequences had he not signed the arbitration agreement, nor any evidence that the agreement was otherwise procedurally unconscionable.[8]

### 2.2 Substantive Unconscionability

To be substantively unconscionable, "the agreement must be 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable,' or must 'shock the conscience,'" i.e., the agreement's terms must be "unreasonably favorable to the more powerful party." *Poublon*, 846 F.3d at 1261 (citing cases). The Agreement does not shock the conscience and does not appear unreasonably favorable to the more powerful party.

The court had earlier raised a question about the cost to Mr. Spikener of arbitration. The Agreement requires Mr. Spikener to pay $150 of the initial arbitration filing fee (with NFG San Francisco or Noble Food paying all other forum costs, including all further filing fees, arbitrator fees, and administrative fees). It was not clear whether Mr. Spikener could afford that fee. Since then, Noble Food has pledged that it will pay Mr. Spikener's $150 share of the filing fee.[9] That pledge addresses the question the court had about the cost of arbitration. *Cf. Hughes v. S.A.W. Entm't, Ltd.*, No. 16-cv-03371-LB, 2018 WL 4109100, at *8 (N.D. Cal. Aug. 29, 2018) ("The Ninth Circuit has indicated that an employer may take an arbitration agreement — originally unconscionable because it requires an employee to bear half the cost of arbitration — and render it non-unconscionable by agreeing to bear the full cost of arbitration.") (citing *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016)). Mr. Spikener has not shown that the Agreement is otherwise substantively unconscionable in a way that bars enforcement of the arbitration provisions.

---

[8] In any event, even if his employment had been conditioned on his agreeing to arbitrate, "[i]n the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but 'there is no other indication of oppression or surprise,' then 'the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Poublon*, 846 F.3d at 1263 (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)).

[9] Vandenberg Decl. – ECF No. 20 at 2 (¶ 3).

## CONCLUSION

The court grants Noble Food's motion to compel arbitration. The court stays this case pending the resolution of arbitration.

The court vacates the case-management conference currently set for November 1, 2018. The court directs the parties to submit a joint status update when the arbitration ends or by January 31, 2019, whichever comes first. As a calendaring measure, the court sets a placeholder case-management conference for February 14, 2019, at 11:00 a.m. (but may vacate and continue that conference if arbitration is still pending at that time).

**IT IS SO ORDERED.**

Dated: September 27, 2018

LAUREL BEELER
United States Magistrate Judge